1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO
3
4

PABLO RIVERA-CORRALIZA, et. al.,

    Plaintiff,                                Civil No. 11-1219 (JAF)

    v.

JUAN PUIG-MORALES, et. al.,

    Defendants.

5
6                          **OPINION AND ORDER**

7        We must decide whether the Puerto Rico Treasury Department's seizure of

8    Plaintiffs' gaming machines violated the First, Fourth, Eighth and Fourteenth

9    Amendments to the U.S. Constitution.

10                                **I.**
11                          **Background**
12
13       Because we must view all facts in the light most favorable to the non-moving

14   party when considering a summary judgment motion, to the extent that any facts are

15   disputed, the facts set forth below represent Plaintiffs' version of the events at issue.

16   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

17       Five operators of adult entertainment machines bring suit against various

18   employees of the Department of the Treasury of Puerto Rico, alleging various violations

19   of Puerto Rican law as well as federal constitutional violations for which they seek relief

20   under 42 U.S.C. §1983.  (Docket No. 16.)  The plaintiffs claim the Treasury Department

21   is improperly regulating and interfering with their business of operating adult

22   entertainment machines. (Id.) Plaintiffs seek several million dollars in damages and

1   punitive damages, and request that we award attorneys' fees and costs incurred in

2   litigation. (Docket No. 16 at 37-38.)   Defendants have filed a motion for summary

3   judgment requesting that the complaint be dismissed with prejudice.  (Docket No. 59.)

4          Plaintiffs allege that Defendant Secretary Puig "went on a media tour to accuse the

5   adult entertainment machine operators of the island of being 'gangsters' and

6   'criminals.'" (Docket No. 16 at 13.)  Plaintiff Rivera-Corraliza responded by giving

7   interviews and attending television and radio shows on behalf of Commercial

8   Recreational Enterprises of Puerto Rico or "EMPRECOM," an organization of adult

9   entertainment machine owners. (Id.)  Rivera-Corraliza "made it clear that Mr. Puig's

10  attacks" were based on EMPRECOM not supporting the installation of a "Video Lottery

11  Terminal system" in Puerto Rico. (Id.)  Plaintiffs allege that the Department then "denied

12  their right to renew the licenses of their machines" and that Defendant Puig (again) went

13  on "a media blitz against them." (Docket No. 16 at 14.)  Rivera-Corraliza went to the

14  press a second time. (Id.)  Although the complaint neglects to specify dates, it alleges

15  that this sequence of events occurred from August of 2009 through October of

16  2009.  (Docket No. 16 at 13-14.)

17         The plaintiffs allege that on February 26, 2010, the Department of Treasury

18  illegally seized licensed adult entertainment machines that belonged to Rivera-Corraliza's

19  business. (Docket No. 16 at 14-15.)  On March 26, 2010, Puig sent a letter informing

20  Rivera-Corraliza that all of his licenses would be temporarily suspended; ultimately this

21  became permanent after an "informal administrative hearing" with the Department of

22  Treasury.  (Docket No. 16 at 16.)  Rivera-Corraliza then filed an administrative complaint

23  with the Department of Treasury in May of 2010. (Docket No. 16 at 17.)

1        On February 25, 2011, Plaintiffs filed the initial complaint.  (Docket No. 1.)  On

2   March 14, 2011, Plaintiffs filed an amended complaint that added Alfredo Pérez-Rivera,

3   Héctor O. Gadea-Rivera, and Rafael Diez de Andino as defendants (Docket No. 4.)  On

4   June 1, 2011, Defendants answered the amended complaint.  (Docket No. 14.)  On June

5   8, 2011, Plaintiffs filed a second amended complaint that added Marisol Flores and

6   Milton Vescovacci-Nazario as defendants. (Docket No. 16.)   Various Defendants

7   answered the second amended complaint on June 27, 2011.  (Docket No. 21.)  Defendant

8   Aileen De Leon answered the second amended complaint on July 18, 2011.  (Docket No.

9   23.)  On December 14, 2011, Defendants Marisol Flores and Milton Vescovacci-Nazario

10  answered the second amended complaint.  (Docket No. 34.)  Plaintiffs filed a motion for

11  partial voluntary dismissal on March 5, 2012.  (Docket No. 35.)  On March 9, 2012, we

12  granted a partial judgment dismissing with prejudice.  (Docket No. 37.)  Defendants filed

13  a motion for summary judgment on October 10, 2012.  (Docket No. 59.)  On October 31,

14  2012, Plaintiffs filed a response in opposition to the motion for summary judgment.

15  (Docket No. 68.)  Defendants replied on November 26, 2012.  (Docket No. 82.)

16                                          **II.**
17                                   **Legal Standard**
18
19       The defendants are entitled to summary judgment on a claim if they can show that

20  there is no genuine dispute over the material facts underlying the claim.  Celotex Corp. v.

21  Catrett, 477 U.S. 317, 323 (1986).  We must decide whether a reasonable juror could find

22  for plaintiffs on each of their claims when all reasonable inferences from the evidence are

23  drawn in their favor.  See Scott v. Harris, 550 U.S. 372, 380 (2007).

1                                                **III.**

2                                             **<u>Discussion</u>**

3

4        Defendants move for summary judgment as to Plaintiffs' entire complaint.

5 Plaintiffs' assert that there are triable claims, including violations of numerous provisions

6 of the federal constitution (First, Fourth, Sixth, and Fourteenth Amendments) and Puerto

7 Rico law.  All of these claims lack merit.

8 **<u>Claims Raised Under 42 U.S.C. § 1983</u>**

9        Section 1983 creates a cause of action against those who, acting under color of

10 state law, violate a plaintiff's Constitutional or federal rights.  <u>See</u> 42 U.S.C. § 1983;

11 <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4(1980).

12 **<u>A.</u>**       **<u>Defendants are Entitled to Summary Judgment on Plaintiffs' Claim of a 4th</u>**

13 **<u>Amendment Violation</u>**

14        Plaintiffs argue that the seizure of their machines is illegal because there was no

15 valid search warrant, in violation of their Fourth Amendment rights.  <u>See</u> U.S. Const.

16 amend. IV.   Defendants argue that the seizures were legal because: (1) the adult

17 entertainment machine industry is a highly regulated industry; (2) the seized machines

18 were illegal.  (Docket No. 59 at 17-26.) Additionally, Defendants argue that they are

19 entitled to qualified immunity.  (Docket No. 59 at 40-45.)

20        Supreme Court precedent recognizes a limited exception to the Fourth

21 Amendment's warrant requirement for searches of businesses in "closely regulated

22 industries."   <u>See</u>, e.g., <u>New York v. Burger</u>, 482 U. S. 691, 699–703 (1987); <u>see also</u>

23 <u>Giragosian v. Bettencourt</u>, 614 F.3d 25, 29 (1st Cir. 2010).  There are two interrelated

24 requirements justifying the warrantless search of businesses operating within a closely

1   regulated industry.  First, a strong state interest must justify the regulatory regime and a

2   warrantless search must further that interest.  See United States v. Gonsalves, 435 F.3d

3   64, 67 (1st Cir. 2006). Second, the pervasive regulation of the industry must have reduced

4   the justifiable privacy expectation of the subject of the search.  Burger, 482 U.S. at 701-

5   702.

6          Here, the search satisfies these requirements, so proceeding without a warrant is

7   constitutionally permissible.  In Puerto Rico, adult entertainment machines operate within

8   a pervasive regulatory regime.  See P.R. Laws Ann. Tit. 15 §§ 82-85.  Puerto Rico has a

9   substantial state interest in regulating games of chance.   Posadas de Puerto Rico

10  Associates v. Tourism Co. of Puerto Rico, 478 U.S. 328, 341 (1986) ("We have no

11  difficulty in concluding that the Puerto Rico Legislature's interest in the health, safety,

12  and  welfare  of  its  citizens  constitutes  a  'substantial'  governmental  interest.").

13  Unannounced searches help the commonwealth ensure compliance with the pervasive

14  regulatory regime.  Similar to the trucks in Maldonado, adult entertainment machines can

15  be quickly altered at any time and can potentially be restored to legal operation after

16  tampering.  United States v. Maldonado 356 F.3d 130, 135-6 (1st Cir. 2004) (holding

17  that warrantless inspections of commercial trucks are necessary to further the regulatory

18  scheme because the industry is mobile and surprise is an important component of an

19  efficacious inspection regime).  Surprise inspections ensure compliance by preventing

20  owners from using their machines illegally during non-inspection times and correcting

21  the problem before an announced inspection.  See United States v. Biswell, 406 U.S. 311,

22  316 (1972) (stating that "if inspection is to be effective and serve as a credible deterrent,

1    unannounced, even frequent, inspections are essential").  Announcing searches ahead of

2    time would thwart the Commonwealth's enforcement of its laws, because machines can

3    be altered or removed before an announced inspection, thus concealing illegal

4    actions.  Unannounced inspections avoid this problem.  Additionally, the defendants have

5    a reduced expectation of privacy in their gambling machines because of the pervasive

6    regulation of gambling.  The defendants have chosen to run a business that the

7    Commonwealth monitors closely. Their machines are public commodities—requiring

8    licensure to operate—and are placed and located in an open place of business, not private

9    homes. Defendants cannot expect privacy in their public accommodations, which they

10   openly offer to the public and agree to maintain according to stringent Commonwealth

11   guidelines.  The search here did not violate the Fourth Amendment.

12        Even if these searches violated the constitution, which we hold they did not, the

13   defendants are entitled to qualified immunity because the Defendants' conduct did "not

14   violate clearly established statutory or constitutional rights of which a reasonable person

15   would have known."   Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation

16   omitted).  Given that the government here searched and seized illegal gambling machines

17   used in a pervasively regulated industry where the machines were publicly accessible, no

18   clearly established Fourth Amendment privacy protection prohibited the Defendants'

19   actions.  Id. at 232. In Replay, Inc. v. Secretary of the Treasury of Puerto Rico, 778

20   F.Supp.2d 207 (D.P.R. 2011), the machines at issue were allegedly legal.  Here, the

21   plaintiffs have provided no evidence of the seized machines' legality.  They have

22   ventured only two arguments and both fall short.   First, Plaintiffs' allege that the

1    government tampered with the machines, which is an unsupported and specious

2    accusation we will not credit, see National Archives and Records Admin. V. Favish, 541

3    U.S. 157, 174 (2004) ("'[I]n the absence of clear evidence to the contrary, courts presume

4    that [Government agents] have properly discharged their official duties'") (citation

5    omitted).  Second, Plaintiffs' claim about the seizing officers' inadequate training, which

6    is irrelevant because it does not tend to show the machines' legality in this case, only the

7    general possibility that an official could make a mistake.  In any event, the plaintiffs

8    received post-deprivation process in which they failed to prove the machine's legality.

9    Given that no case clearly establishes a Fourth Amendment violation based on

10   Defendants' actions, Defendants are entitled to qualified immunity.

11   **B.    Defendants are Entitled to Summary Judgment on Plaintiff Rivera-**

12   **Corraliza's Claim of First Amendment Retaliation**

13        Plaintiffs allege that the seizure of their adult entertainment machines was in

14   retaliation for the interviews Rivera-Corraliza gave with local press, critizing Secretary of

15   Treasury Puig.  (Docket No. 68 at 7-9.)  Defendants argue that Plaintiffs have failed to

16   state a First Amendment claim and ask that we dismiss the claim with prejudice.  (Docket

17   No. 59 at 12-15.)

18        Government actors violate the First Amendment if they retaliate against an

19   individual for constitutionally protected speech.  González-Droz v. González-Colón, 660

20   F.3d 1, 16 (1st Cir. 2011).  Such action "offends the Constitution [because] it threatens to

21   inhibit exercise of the protected right," Crawford–El v. Britton, 523 U.S. 574, 588, n. 10

22   (1998), and punishes an individual for speaking out.   Id., at 592; see also Perry v.

1    Sindermann, 408 U.S. 593, 597 (1972) (noting that the government may not punish a

2    person or deprive him of a benefit on the basis of his "constitutionally protected speech").

3          To make out a First Amendment retaliation claim, a plaintiff mush show that his

4    conduct was constitutionally protected, Goldstein v. Galvin, 2013 WL2466861(1st Cir.

5    2013), and establish "a causal connection between the allegedly protected speech and the

6    allegedly retaliatory response."   Id.   Causation is established by showing that the

7    plaintiff's conduct was a "substantial" or "motivating" factor in bringing about the

8    allegedly retaliatory action.  Some adverse official actions are acceptable if premised on

9    nonretaliatory grounds.  But where nonretaliatory grounds are insufficient to provoke the

10   official adverse consequences, we can infer that the plaintiff's protected speech was the

11   but-for cause of adverse official action, which offends the Constitution. See Crawford–

12   El, supra, at 593; Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 283–284 (1977)

13   (adverse action against government employee cannot be taken if it is in response to the

14   employee's "exercise of constitutionally protected First Amendment freedoms").

15         Here, plaintiffs fail to present sufficient evidence to demonstrate that the stated

16   reason for the seizure of the machines—namely, their illegality—was an insufficient

17   cause for the adverse action or thus merely a pretext for retaliation.

18         Rivera-Corraliza complained of Secretary Puig's policy decisions somewhere

19   during the months of August to October 2009.  The Department of Treasury first seized a

20   machine almost a full four months later, in February of 2010.  This is a relatively long

21   duration, during which there were no complaints of interference by Treasury Department

22   officials.  As the First Circuit frequently has observed in antidiscrimination cases, "the

1    inference of a causal connection becomes tenuous with the passage of time." <u>Calero–</u>

2    <u>Cerezo v. U.S. Dept. of Justice</u>, 355 F.3d 6, 25–26 (1st Cir.2004) (holding that a *three-*

3    *month period* between the protected conduct and alleged retaliation undermined the

4    inference of causation); <u>see also</u> <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 209 (10th

5    Cir.1997); <u>Hughes v. Derwinski</u>, 967 F.2d 1168, 1174-75 (7th Cir.1992) (three and four

6    month periods have been held insufficient to establish a causal connection based on

7    temporal proximity).  Here, the sequence of events is too tenuous to support a causal

8    connection between the statutorily protected conduct and the adverse action, not the

9    converse.

10        Plaintiffs have not provided any additional evidence that would support their claim

11    that the Defendants' undertook adverse actions based to retaliate for the Plaintiffs'

12    protected speech.  They have produced no other theory by which we could conclude that

13    the Defendant's proffered reasons - the illegality of the machines - were false or

14    pretextual.  As a result, they cannot create a genuine issue of material fact on this claim,

15    and we conclude that summary judgment in favor of the Defendants on Rivera-

16    Corraliza's First Amendment claim is appropriate.

17    **<u>C.</u>**    **<u>Defendants are Entitled to Summary Judgment on Plaintiffs' Claim of</u>**

18    **<u>Excessive Fines in Violation of the Eighth Amendment</u>**

19        Plaintiffs state that in addition to their machines being "illegally seized," they

20    were "issued fines that crippled their businesses." (Docket No. 68 at 18.) Plaintiffs then

21    allege that by not "selling" licenses, the Department of Treasury has imposed an

22    excessive fine under the Eighth Amendment. (Docket No. 68 at 19.)  Defendants argue

1    that Plaintiffs have failed to state an Eighth Amendment claim and ask that we dismiss

2    the claim with prejudice.  (Docket No. 59 at 26-28.)

3          Forfeitures are "fines" within the meaning of the Eighth Amendment if they

4    "constitute punishment for an offense." United States v. Bajakajian, 524 U.S. 321, 328

5    (1998); see also Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492

6    U.S. 257, 265 (1989) ("[W]e think it significant that at the time of the drafting and

7    ratification of the Amendment, the word 'fine' was understood to mean a payment to a

8    sovereign as punishment for some offense.").   The forfeiture of contraband may be

9    characterized as remedial because it removes dangerous or illegal items from society.

10   Austin v. United States, 509 U.S. 602, 621 (1993) (citing United States v. One

11   Assortment of 89 Firearms, 465 U.S. 354, 364 (1984)).

12         The Plaintiffs' best argument is that the purported punishment in this case—the

13   seizure of illegal gambling machines—constitutes forfeiture of contraband.   See 34

14   LPRA § 1723, et seq.5.  Even granting that point for argument's sake, the salient question

15   becomes whether this punishment is proportionate.  "[A] punitive forfeiture violates the

16   Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's

17   offense.  Bajakajian, 524 U.S. at 334 (1998).  Here, forfeiture was limited to the seizure

18   of the machines that were themselves illegal.  That is the very definition of proportional:

19   the forfeiture touched only those things that were violating the law and extended no

20   further.   Thus, this forfeiture cannot a constitutionally excessive fine.   Plaintiffs'

21   remaining arguments are unsupported and nonsensical because declining to grant a

22   license is in no way the equivalent of imposing a fine.  We find no support for this

1    argument, legally or factually.  And Plaintiffs' mention of allegedly crippling fines are

2    merely a phantom of the Plaintiff's complaint—they have provided no substantive

3    information about the alleged fines.  Without more, we cannot determine their

4    proportionality.

5    **D.    Defendants are Entitled to Summary Judgment on Plaintiffs' Claim of**

6    **Violations Under the 14th Amendment**

7    **1.    Due Process**

8    Plaintiffs argue that Defendants deprived them of their property interests without

9    due process of law because they did not provide adequate pre-deprivation remedies, such

10    as notification and an opportunity to be heard.  (Docket No. 68 at 20.)  Defendants argue

11    that Plaintiffs have failed to state a Fourteenth Amendment claim and ask that we dismiss

12    the claim with prejudice.  (Docket No. 59 at 29-37.)

13    The Fourteenth Amendment protects individuals against the deprivation of liberty

14    or property by the government without due process. U.S. Const. amend XIV.  A section

15    1983 claim based upon procedural due process has three elements: (1) a liberty or

16    property interest protected by the Constitution; (2) a deprivation of the interest by the

17    government; (3) lack of process.  Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1,

18    11 (1st Cir. 2013).

19    Ordinarily, the Due Process Clause requires notice and an opportunity for a

20    hearing prior to a final deprivation of liberty or property.  Parratt v. Taylor, 451 U.S. 527,

21    540 (1981).  The Supreme Court, however, "has recognized, on many occasions, that

22    where a State must act quickly, or where it would be impractical to provide

1   predeprivation process, postdeprivation process satisfies the requirements of the Due

2   Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). The First Circuit has

3   stated that "[t]he variety of ... circumstances within which the exception [to the general

4   requirement of predeprivation process] has been recognized demonstrates that the

5   exception is a flexible one." Hightower v. City of Boston, 693 F.3d 61, 85 (1st Cir.

6   2012) (quoting San Gerónimo Caribe Project, Inc. v. Acevedo–Vilá, 687 F.3d 465, 488

7   (1st Cir.2012) (internal quotation marks omitted.)

8          Here, Plaintiffs' machines appeared to be operating illegally.  Puerto Rican law

9   authorizes seizure under such circumstances and provides a post-deprivation process,

10  which several defendants exercised.  Article 9 of Act No. 119-2011**.**  This is an adequate

11  constitutional protection because here, providing a predeprivation notice and hearing

12  would be inconsistent with the state's need to protect citizens from the illegal machines.

13  Allowing the machines to remain in service would expose citizens to the risk of unfair

14  operation, which the law seeks to avoid.  Protecting against this immediate harm justifies

15  seizing the machines immediately, while allowing the owner of the machines to appeal

16  the seizure and prove the machines' legality, if possible.  Calero-Toledo v. Pearson Yacht

17  Leasing Co., 416 U.S. 663, 678-9 (1974).

18  **2.      Equal Protection**

19         Plaintiffs complain, in vague fashion, that the defendants deprived them of their

20  right to equal protection under the law.  (Docket No. 16 at 34-35.)  Defendants argue that

21  Plaintiffs have failed to state an Equal Protection claim.  We agree.  (Docket No. 59 at

22  37-39.)

1        The Equal Protection Clause of the Fourteenth Amendment prohibits the States

2   from making distinctions that burden a fundamental right, target a suspect class, or

3   intentionally treat an individual differently from others similarly situated without any

4   justification for the difference.  Vacco v. Quill, 521 U.S. 793, 799 (1997).  To prove a

5   violation of the Equal Protection Clause, Plaintiffs' must show that (1) compared with

6   others similarly situated, they were selectively treated; and (2) that such selective

7   treatment was based on impermissible considerations such as race, sex, or religion.

8   Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013).  The plaintiff must show

9   that Defendants acted with a discriminatory purpose, which means proving that

10  Defendants undertook a course of action "because of, not merely in spite of, the action's

11  adverse effects upon an identifiable group."  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)

12  (internal quotation marks and alterations omitted).

13       It is true that 'the Constitution prohibits selective enforcement of the law based on

14  considerations such as race" and that the proper basis for objecting to "intentionally

15  discriminatory application of laws is the Equal Protection Clause."  Whren v. United

16  States, 517 U.S. 806, 813 (1996).  Here, however, Plaintiffs allege that they were

17  selectively treated since they were punished for operating illegal gaming machines but

18  the individuals who owned the establishments where those machines were located were

19  not.  But Plaintiffs and the establishments owners are not similarly situated: one party

20  owned the illegal machines, the other did not.  Just because the establishment owner

21  profited from having a gaming machine on the premises does not mean he had reason to

22  know of the machine's illegality: an establishment owner is in, for example, the

1   convenience store business, not the gaming business.   no allegations that they were

2   selectively treated, nor that Commonwealth officials acted, because of racial or a class-

3   based animus.   As a result, Plaintiffs cannot prove an equal protection violation since

4   they have not alleged that the defendants treated them differently than others similarly

5   situated.

6   **E.**       **Plaintiffs' Commonwealth Tort Claims**

7         Plaintiffs allege violations of rights afforded by the Puerto Rico Civil Code.

8   (Docket No. 16 at 35.)  Specifically, Plaintiffs allege violations of Article 1802 of the

9   Puerto Rico Civil Code and violations of Article II, Sections Four, Seven, and Ten of the

10  Constitution of Puerto Rico.  (Docket No. 16 at 36.)  The complaint does not make clear

11  what action constitutes the basis for these violations.  In the response in opposition to the

12  motion for summary judgment, it seems that Plaintiffs are alleging tort violations under

13  Article 1802 of the Puerto Rico Civil Code.  (Docket No. 68 at 26-27.)  However it is not

14  entirely clear what is being alleged insofar as violations of Puerto Rican laws are

15  concerned.  Plaintiffs state that "[b]ased on the previous discussion" of their claims under

16  the United States Constitution, "it is clear that they have a valid claim under Article 1802

17  of the Puerto Rico Civil Code."  (Docket No. 68 at 27.)  There is no further mention of

18  violations of the Constitution of Puerto Rico.  Defendants argue that Plaintiffs have failed

19  to state a claim under Article 1802 and ask that we dismiss the claim with prejudice.

20  (Docket No. 59 at 45-46.)

21        We have discretion to decline supplemental jurisdiction over the remaining

22  Commonwealth law claims since we have dismissed all of the claims over which we have

23  original jurisdiction.   See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v.

Gibbs, 383 U.S. 715, 726 (1966) ("if the federal law claims are dismissed before trial…the state claims should be dismissed as well).  In exercising our discretion under § 1367(c), we must consider the issues of "judicial economy, convenience, fairness, and comity."  Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003).  Having considered these factors, we decline to exercise supplemental jurisdiction over Plaintiffs' Commonwealth law claims.   Therefore, we **DISMISS WITHOUT PREJUDICE** Plaintiffs' remaining Commonwealth law claims.

## IV.
## Conclusion

For the foregoing reasons, Defendants' summary judgment motion is **GRANTED.** Plaintiffs' Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 15th day of July, 2013.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE